**FILED**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

NOV 2 7 2018

THOMAS G BRUTON
CLERK, U.S DISTRICT COURT

CIVIL ACTION NO. _____

JEFFREY MALKAN,

           *Plaintiff*,

       v.

AMERICAN BAR ASSOCIATION; COUNCIL
OF THE SECTION OF LEGAL EDUCATION
AND ADMISSIONS TO THE BAR, AMERICAN
BAR ASSOCIATION; and ACCREDITATION
COMMITTEE OF THE SECTION OF LEGAL
EDUCATION AND ADMISSIONS TO THE
BAR, AMERICAN BAR ASSOCIATION,

           *Defendants*.

_____/

COMPLAINT

DEMAND FOR JURY TRIAL

**1:18-cv-07810
Judge Sara L. Ellis
Magistrate Judge Susan E. Cox**

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jeffrey Malkan, proceeding pro se, brings this civil action against the

Defendants—American Bar Association; Council of the Section of Legal Education and

Admissions to the Bar, American Bar Association; and Accreditation Committee of the Section

of Legal Education and Admissions to the Bar, American Bar Association (collectively,

"ABA")—and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action for declaratory relief and monetary damages to remedy the

ABA's knowing and willful protection of, and complicity in, an accreditation fraud at the Law

School of the State University of New York at Buffalo.

2.     The dispositive fact before this Court is the ruling by the U.S. Court of Appeals,

dated October 30, 2017, that it is legally impossible for the State University of New York at

Buffalo to comply with ABA Standard 405(c), which is the core academic freedom standard that

has protected the mission and the integrity of clinical faculties throughout the United States, including the SUNY Buffalo Law School, since 1996.

3.      The University sought and obtained a judicial decision that reduces all clinical professors in the sixty-four campus SUNY system, including the SUNY Buffalo Law School, to the status of "at will" employees at the end of every three-year term, without regard to any contractual promises, faculty policies and bylaws, university rules and procedures, or ABA accreditation standards to the contrary.

4.      One and a half years prior to the Second Circuit's ruling, SUNY Buffalo received an ABA sabbatical site evaluation visit, after which the ABA approved the Law School for another seven year cycle of operation as an accredited law school.

5.      At that point, the ABA was in possession of conclusive evidence that the Law School's compliance with Standard 405(c) was based entirely on false documentation – unenforceable contracts, non-functional due process procedures, and sham faculty appointments – all of which the University had disavowed in both state and federal courts.

6.      That evidence took the form of two judicial decisions, one from the New York Court of Claims and the other from the federal magistrate's court of the Western District of New York, both holding that any long-term contracts and due process rules that promised to protect the academic freedom of the clinical faculty were ultra vires, unlawful, null and void.

7.      After the 2016 reaccreditation was approved by the ABA, the State University of New York at Buffalo proceeded to plead exactly the same defense to the U.S. Court of Appeals for the Second Circuit.  That defense was, again, successful.

8.      The ABA's 2016 reaccreditation of a Law School that it knew had repudiated Standard 405(c) enabled SUNY Buffalo to obtain a legal outcome that exonerated its Law School of any legal liability for the ongoing fraud that it was perpetrating on its clinical faculty.

9.     The ABA also knows that its continuing accreditation of a Law School that has repudiated Standard 405(c) imposed the stigma of a "for cause" termination on the Plaintiff that made it impossible for him to resume his career at any other accredited law school.

10.     This Court should hold the ABA accountable for perpetrating a fraud on the legal education community by promulgating, in the form of a mandatory accreditation requirement, a non-functional standard that it has never treated as anything but an empty formality.

## PARTIES

11.     Plaintiff Jeffrey Malkan (the "Plaintiff") was employed as a member of the full time faculty at the SUNY Buffalo Law School from 2000 through 2009, with the expectation of a permanent faculty appointment with presumptively renewable contracts, in-house due process rights, and a good cause standard of review, at the title and rank of Clinical Professor of Law.

12.     Defendant American Bar Association is a corporate entity organized into various components, including the "Council" and the "Accreditation Committee," as described below.

13.     Defendant Council of the Section of Legal Education and Admissions to the Bar, American Bar Association ("Council") is a component of the American Bar Association. Pursuant to 34 C.F.R. Part 602, the U.S. Department of Education ("DOE"), since 1952, has recognized the Council as the authorized agency for accrediting programs in legal education that lead to a professional degree in law and the law schools offering such programs.

14.     Defendant Accreditation Committee of the Section of Legal Education and Admissions to the Bar, American Bar Association ("Committee" or "Accreditation Committee") is a component of American Bar Association. The DOE's recognition of the Council as an accrediting agency extends to the Committee for decisions involving continued accreditation of law schools.

15.     The American Bar Association, the Council, and the Accreditation Committee

are collectively referred to herein as the "ABA."

## JURISDICTION AND VENUE

16.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  The Plaintiff and the Defendants are citizens of different States.  The Plaintiff is a citizen of New York.  The ABA is incorporated in Illinois, where it also has its principal place of business.  The Council and the Committee are components of the American Bar Association and are not separately incorporated. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  The Committee and Council corresponded with the Plaintiff from the ABA's address in Chicago, Illinois, and the SUNY Buffalo Law School made its submissions to the ABA to the same address.

## REGULATORY FRAMEWORK FOR LAW SCHOOL ACCREDITATION

### DOE Requirements for Accrediting Agencies

18.     Pursuant to 34 C.F.R. Part 602, the U.S. Department of Education ("DOE") has recognized the ABA Council as the agency for accrediting programs in legal education that lead to a professional degree in law and the law schools offering such programs.

19.     The DOE's recognition of the ABA Council extends to the Committee for decisions involving continued accreditation of law schools.

20.     The DOE requires accrediting agencies to follow uniform procedures in the accreditation of institutions of higher education.   These procedures apply to the ABA's accreditation of American law schools.

21.     The DOE requires accrediting agencies to take remedial and punitive measures, including withdrawal of accreditation, against institutions that fail to comply with mandatory accreditation standards.  *See* "Required Standards and their Application," 34 CFR

Part 602, Subpart B.

22.     Under DOE rules, the application of the agency's enforcement powers to a

standards violation is *mandatory* and the time frame for taking adverse action against a non-

complying institution or program is *immediate.*

> 602.20   Enforcement of standards.
>
> (a)  If the agency's review of an institution or program under any standard
> indicates that the institution or program is not in compliance with that
> standard, the agency must-
>
>> (1) Immediately initiate adverse action against the institution or
>> program; or
>>
>> (2) Require the institution or program to take appropriate action to
>> bring itself into compliance with the agency's standards….
>
> (b)  If the institution or program does not bring itself into compliance
> within the specified period, the agency must take immediate adverse action
> unless the agency, for good cause, extends the period for achieving
> compliance.

23.      The DOE also requires the agency to provide accurate information to the

general public about its accreditation procedures and outcomes, as well as the opportunity for

the public to file complaints against institutions that are violating its accreditation standards.

These complaints must be promptly and impartially reviewed by the agency and followed-up

by enforcement action as warranted by the facts.  *See* "Operating Procedures all agencies

must have," 34 CFR Part 602.23, Subparts B and C.  In addition, the agency is required to

review in a timely, fair, and equitable manner, and apply unbiased judgment to, any

complaints against itself.  *Id.*

## ABA Standards for the Approval of Law Schools

24.      The principal task of a DOE-approved accrediting agency is to promulgate

standards and monitor compliance by means of periodic site visits and self-study reports.

25.      The ABA has promulgated Standards for Approval of Law Schools.

26.      Standard 405(c) is the clinical faculty standard.

27.     The policy underlying Standard 405(c) is the protection of academic freedom, which is extended to clinical faculties for the same reasons and to the same extent that it is provided to doctrinal faculties.

28.     Under Standard 405(c), the Accreditation Committee is charged to protect the clinical professors of every ABA-accredited law school from intimidation, abuse, coercion, or harassment in the exercise of their legal, professional, and educational duties.

29.     Standard 405(c) provides that –

> A law school shall afford to full-time clinical faculty members a form of security of position *reasonably similar to tenure,* and non-compensatory perquisites reasonably similar to those provided other full-time faculty members.

30.     Interpretation 405-6 of that Standard provides that –

> A form of security of position reasonably similar to tenure includes a separate tenure track or *a program of renewable long-term contracts….* For the purposes of this Interpretation, *"long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom.* During the initial long-term contract or any renewal period, the contract may be terminated for good cause, including termination or material modification of the entire clinical program.

(Emphasis added.)

## ABA Rules of Procedure for the Accreditation of Law Schools

31.     In addition to the ABA Standards, the Accreditation Committee is bound by its own Rules of Procedure.

32.     Rule 16 specifies "Sanctions for Noncompliance with a Standard."

33.     Under Rule 16, a law school may be sanctioned for, among other things, "[m]aking misrepresentations or engaging in misleading conduct in connection with consideration of the law school's status by the Committee or the Council, or in public statements concerning the law school's approval status."

34.     Sanctions may include "(1) A monetary payment… (3) Public censure; (4) Private censure; (5) Publication or distribution of an apology or corrective statement by the law school; (6) Probation for a specific period or until specific conditions are fulfilled…; or (8) Withdrawal of provisional or full approval."   The latter sanction would disqualify the graduates of the Law School from sitting for the bar examination and effectively put it out of business.

35.     In addition, "[a]ny sanction… may be imposed, even if the law school has, at the time of the decision or recommendation, ceased the actions that are the basis for sanctions or otherwise brought itself into compliance with the Standards."

36.     Finally, Rule 16 specifies the following aggravating factors to be applied in determining the appropriate sanction for a standards violation, including,

> the degree of negligence, recklessness, or knowledge; effort to conceal; dishonest or selfish motive; a pattern of misconduct; bad faith obstruction of an investigation or sanction proceeding by failing to comply with requests of the Managing Director's Office, a Fact Finder, or rules of a sanction proceeding; submission of false or misleading evidence, false or misleading statements, or other deceptive practices during the investigation process or sanction proceeding; refusal to acknowledge wrongful nature of conduct; failure to have sufficient systems in place to ensure compliance, including the law school dean's lack of oversight; institutional incentive structures that may contribute to noncompliance; and failure to enquire or investigate when circumstances warrant enquiry or investigation.  [Enumeration omitted.]

## FACTUAL ALLEGATIONS

37.     On July 25, 2000 the Plaintiff was offered a faculty appointment at the rank and title of Clinical Associate Professor of Law at the State University of New York at Buffalo, with a separate administrative appointment as Director of the Legal Research and Writing Program.  He accepted the offer on August 7, 2000, and subsequently served the Law School for six years, or two three-year contract terms.

38.     On April 28, 2006, the Promotion and Tenure (P&T) Committee of the

SUNY Buffalo Law School recommended his reappointment and promotion to the title

and rank of full Clinical Professor of Law, which took the form of a 405(c)-protected

contract, signed and dated by former-Dean R. Nils Olsen, Jr., on October 19, 2006, and

accepted by the Plaintiff on November 16, 2006.

### The Plaintiff's 405(c)-protected contract

39.     Dean Olsen introduced the contract by stating that the intention of the

parties was to formalize the requirements of Standard 405(c).

> As we have discussed throughout your service to UB Law School,
> your appointment is covered by the ABA rules and is intended to
> fully comply with those rules, particularly standard 405(c) and all
> accompanying interpretations, especially interpretations 405-6 and
> 405-8. Now that you have successfully been appointed following a
> full review, future reviews will have the "for cause only" removal
> standard set forth in the ABA Standards. Under ABA policies, this
> standard is meant to be similar to that term as applied when dealing
> with tenured faculty and is intended to ensure academic freedom.

40.     He proceeded to promise on the University's behalf that a decision by any future

Dean to non-renew the contract would have to be confirmed during the contract's terminal year,

in accord with the Faculty Bylaws, in the form of a recommendation voted upon by a committee

of the entire tenured faculty at his current rank or higher.

41.     This 405(c)-compliant contract, together with the Law School's status as an

ABA accredited law school, was the basis of the Plaintiff's expectation that his contract renewal

would be mandatory, in the absence of good cause, upon the expiration of each term of service.

42.     Two years later, on August 28, 2008, the new interim dean of the Law School,

Makau W. Mutua, issued a notice of non-renewal that terminated the Plaintiff's employment as

of August 31, 2009, without any consultation, deliberation, or recommendation by the faculty.

43.     In subsequent proceedings before the federal district court of the Western

District of New York and the New York State Court of Claims, the Attorney General of New

York presented the argument that the Policies of the Board of Trustees, which are regulations of

the New York State Department of Education, prevent any SUNY campus from granting

presumptively renewable contracts to full-time faculty members of any college or academic

department, including the Law School.

44.     That legal restriction, according to the Attorney General, retroactively abrogated

all of the Law School's certifications of compliance with ABA Standard 405(c) and any

institutional rules and procedures or contractual commitments that 405(c)-compliance entailed.

### SUNY Buffalo's repudiation of Standard 405(c)

45.     The Plaintiff first attempted to notify the Accreditation Committee of the

University's repudiation of Standard 405(c) in a third party comment on the Law School's

pending application for reaccreditation, dated March 17, 2016, that he filed in accord with the

Rules of Procedure for the Accreditation of Law Schools.

46.     The complaint stated as follows:

> The University has represented to the U.S. District Court of the Western
> District of New York that it is not able to comply with ABA Standard
> 405(c) because presumptively renewable term contracts are prohibited by
> the SUNY Trustees' Policies. This contradicts the representations made to
> the ABA in the Self-Study Report of April 2009. It also contradicts the
> Faculty Bylaws and the Clinical Faculty Appointments Policy.

47.     The comment enclosed a copy of the Magistrate's Report and Recommendations,

dated October 1, 2015, as well as excerpts from the deposition of SUNY Buffalo's employment

counsel, James L. Jarvis, Jr., Esq., dated December 20, 2013, in which he testified that the

University has never had the legal capacity to honor any of its 405(c)-protected contracts.

48.     On April 12, 2016, the Accreditation Counsel, Stephanie Giggetts, Esq.,

responded that "[s]ince the law school is due to receive a site evaluation within a few weeks,

this matter will be referred to the site team and handled as part of the sabbatical site evaluation."

49.     The Office of the Managing Director provides a Site Visit Template to all site

visit teams for the purpose of "giv[ing] the Council as much information relevant to the

Standards as possible, so it may take appropriate action based upon the team's report." The

Template requires the site visit team to report the following data pertaining to Standard 405(c):

> *Standard 405(c) and Interpretations 405-6 and 405-7.*
>
> (a) Describe the Law School's system of security of position for full-time
> clinical faculty. (Indicate if there are no clinics.) (b) If the full-time
> clinical faculty do not have a system of tenure, state the length of the
> contracts for full-time clinical faculty and whether the contracts will be
> renewed, including whether the contracts are presumptively renewable….
> (c) If the contract system does not lead to a presumptively renewable
> contract of at least five years in length, describe how the Law School
> ensures academic freedom and note whether it is the same academic
> freedom as provided to tenure-track faculty.

50.     The SUNY Buffalo sabbatical site evaluation was completed on or about April

23, 2016.

51.     At its April 20-21, 2017 meeting, the Accreditation Committee considered the

status of the SUNY Buffalo Law School and found that it was not in compliance with Standards

202(a) and 502(d). In accord with DOE regulations, the Committee posted a public notice

requiring the Law School to submit a report setting forth its plan for rectifying its non-

compliance with the identified standards.

52.     The Committee reported no compliance issue with Standard 405(c).

53.     Between the ABA's 2009 and 2016 sabbatical site evaluations of SUNY Buffalo,

that is, in the time frame when the Plaintiff was challenging the Law School's repudiation of

Standard 405(c) in federal and state courts, every single 405(c)-protected clinical professor was

either terminated by the Dean or forced into early retirement. Four out of five of these clinical

professors were at least ten years younger than the Social Security retirement age of sixty-six.

54.     In knowing and willful disregard of its duty to communicate truthfully about the

compliance status of accredited law schools and to retract misinformation that it previously

published by reason of negligence or fraud, the ABA continues to communicate false assurances

of SUNY Buffalo's compliance with Standard 405(c).

**The U.S. Court of Appeals confirms that SUNY Buffalo has repudiated Standard 405(c)**

55.     On October 30, 2017, the U.S. Court of Appeals for the Second Circuit issued its

decision in the Plaintiff's due process lawsuit against former-Dean Makau W. Mutua.

> The district court correctly granted summary judgment to Mutua.  Due
> process can only be violated if a protected property interest is at issue.
> White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir.
> 1993).  "A person's interest in a benefit is a 'property' interest for due
> process purposes if there are such rules or mutually explicit
> understandings that support his claim of entitlement to the benefit and that
> he may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601
> (1972) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577
> 36 (1972)).  "Mutually explicit understandings" may include a "written
> contract with an explicit tenure provision" between a professor and state
> university. Id.  But "mutual understandings and customs could not create a
> property interest for purposes of due process when they are contrary to the
> express provisions of regulations and statutes."  Baden v. Koch, 638 F.2d
> 486, 492 (2d Cir. 40 1980).  SUNY regulations cap term appointments at
> three years and do not "create any manner of legal right, interest or
> expectancy in any other appointment or renewal." 8 N.Y.C.R.R. § 335.13.
> *None of what Malkan cites—UB School of Law's by-laws, customs,
> accreditation reports, the American Bar Association's standards, and his
> contract—overrides that regulatory term*.... As for whether UB School of
> Law is misrepresenting the employment status of its clinical professors to
> the American Bar Association, Malkan offers no estoppel argument, and
> we decline to consider one.

(Emphasis added.)  This decision adopts the interpretation of the Policies of the Board of

Trustees that was advocated by the Attorney General on the University's behalf.

56.     The Plaintiff, on January 29, 2018, provided the Accreditation Committee with a

copy of this decision as evidence of the Law School's repudiation of Standard 405(c).

57.     At no point in this process did the Plaintiff ask the Accreditation Committee to

serve in a mediating or dispute-resolving capacity, intervene regarding any adverse action taken

against him or anyone else by the Law School, act in any way on his or anyone else's behalf, or

order any individual relief to anyone regarding any aspect of the facts that he was reporting.

### The ABA's refusal to take enforcement action

58.     On June 4, 2018, the Plaintiff received the following response from the

Accreditation Counsel:

> After a thorough review of your complaint and the Law School's
> response, I have concluded that the facts you set forth fail to allege
> a violation by the Law School of the ABA Standards for Approval
> of Law Schools.  Specifically, as specified in Rule 44, upon such a
> determination the matter is closed.  As provided in Rule 46, this
> matter is not subject to appeal to the Council or to the Accreditation
> Committee, or elsewhere in the American Bar Association.

59.     The Plaintiff sought clarification of this response from Professor Bradley Clary,

Clinical Professor of Law at the University of Minnesota and past president of the Association

of Legal Writing Directors, who is also a member of the Accreditation Committee.

> As I tried to explain in my filing with the Managing Director, the
> State University of New York at Buffalo, on October 30, 2017,
> sought and obtained a decision from the U.S. Court of Appeals for
> the Second Circuit holding that it is legally impossible for the SUNY
> Buffalo Law School to comply with Standard 405(c)....
>
> In other words, SUNY Buffalo certified one set of facts to the ABA
> in order to secure its reaccreditation and exactly the opposite set of
> facts to the U.S. Court of Appeals in order to win a due process
> lawsuit....  I cannot understand how these false certifications of
> compliance, repeatedly made over a period of twenty some-odd
> years, can be overlooked unless Standard 405(c) is nothing but an
> empty formality.
>
> I am not approaching you with the intent of circumventing the
> Committee's Rules and Procedures.  I simply hope that you may be
> able to find out why the 405(c)-compliance issue I have raised with
> the Managing Director does not merit a full review by the
> Accreditation Committee.

60.     Professor Clary responded that he could not comment on what action, if any, the

Accreditation Committee might take regarding the Second Circuit's ruling, but advised him that

he would submit the Plaintiff's additional information to the Accreditation Counsel.

61.     The Accreditation Committee met on June 30, 2018, and took no action on the

evidence of SUNY Buffalo's repudiation of Standard 405(c).

62.     On September 7, 2018, the Plaintiff filed an objection to the Managing Director,

Barry Currier, about the ABA's failure to give a reasoned response to any of his submissions:

> SUNY Buffalo has knowingly and willfully subverted the integrity of
> the accreditation process by making false certifications of compliance
> with Standard 405(c) in both its 2009 and 2016 reaccreditations.
> According to your own Rules of Procedure, those violations warrant the
> most severe punitive measures against the offending law school. See
> Rule 16 (a)-(e). Your accreditation counsel, however, has informed me
> that you decline to find any violation at all….
>
> Because you persist in your endorsement of SUNY Buffalo's
> compliance with Standard 405(c), *which you know is a fraud,* I believe
> that the stigma I have suffered, along with my ensuing costs and
> damages, may be found in a court of law to be the responsibility of your
> Committee. I conclude by saying that I do not consider this matter
> closed. I will leave it at that for now, except to express my hope that I
> have persuaded you of the urgency and gravity of this situation and that
> you will respond by informing me that you have taken action to deal
> with SUNY Buffalo at the very next meeting of your Committee.

63.     Attached to this submission was a front page article from the *Buffalo News,* dated

September 27, 2014, and entitled "Deep Rift Exposed as UB Law's Dean Resigns."

64.     The *Buffalo News* recounted former-Dean Mutua's attack on the academic

freedom of the Law School faculty over the previous seven years, which focused on his

repression of the clinical faculty.

65.     The article also reported allegations of former-Dean Mutua's repression of

women's rights within the faculty, as well as his repression of faculty self-governance, which

included the University's refusal to allow it to nominate its own dean in 2008-2009, and its

intervention to suspend a no-confidence vote against former-Dean Mutua in September of 2010.

66.     Professor Mutua was finally removed from the Dean's Office on September 24,

2014, three days prior to the publication of the *Buffalo News* article, which also reported, as the

centerpiece of its coverage, that the majority of the tenured faculty had submitted declarations

and deposition testimony to the federal district court and the Disciplinary Committee of the

Eighth Judicial Department accusing him of lying under oath in both state and federal courts

about the vote of the P&T Committee on the Plaintiff's promotion to clinical professor.

67.     On September 15, 2018, the Accreditation Committee announced enforcement actions against the University of Puerto Rico and the Arizona Summit Law School, but took no action against SUNY Buffalo.

### The ABA's duties and the limits of its discretion

68.     The ABA does not have the discretion to ignore a standards violation of which it has actual knowledge.

69.     The ABA does not have the discretion to disregard a decision from the U.S. Court of Appeals of which it has actual knowledge.

70.      The ABA does not have the discretion to disregard a decision from the U.S. Court of Appeals of which it should have been aware, even without a third party informant, in the exercise of due diligence in its oversight duties.

71.     The ABA does not have the discretion to overrule binding precedent from the U.S. Court of Appeals regarding the knowing and willful violation of an accreditation standard.

72.     The ABA does not have the discretion to allow SUNY Buffalo to reestablish compliance with Standard 405(c) by exempting itself from a ruling of the U.S. Court of Appeals that it successfully obtained for the express purpose of repudiating Standard 405(c).

73.     The ABA does not have the discretion to approve any "alternative arrangement" for the protection of academic freedom at an ABA accredited law school where 405(c)-protected clinical professors have no legal rights that continue from one contract term to the next.

### CAUSES OF ACTION

### COUNT I
### (FRAUD AND NEGLIGENT MISREPRESENTATION)

74.     Plaintiff repeats and realleges the allegations of paragraphs 1-73 as if set forth fully herein.

75.     In Illinois, a cause of action for common law fraud or fraud in the inducement must allege the following elements:  (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff.

76.     In Illinois, a cause of action for negligent misrepresentation must allege the following elements:  (1) a false statement of a material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from reliance when the party making the statement is under a duty to communicate accurate information.

77.     The ABA maintains a list of ABA-accredited law schools on its website and in its print publications, pursuant to its duties as a DOE-approved accrediting agency.

78.     That list at all times relevant to this complaint included SUNY Buffalo as an ABA-accredited law school, which means that the ABA has certified it to be in compliance with all ABA accreditation standards, including Standard 405(c).

79.     The ABA knows that its certifications of 405(c)-compliance will be used and relied upon by a small and finite group of legal professionals at any given time, that is, those who are seeking clinical faculty appointments, those who are considering offers of clinical faculty appointments, and those who are holding clinical faculty appointments.

80.     The Plaintiff could not possibly have accepted a clinical faculty appointment at SUNY Buffalo if he had any reason to believe that the ABA's imprimatur on that law school's compliance with Standard 405(c) was fraudulently applied.

81.     The Attorney General on October 14, 2017 successfully argued before the

U.S. Court of Appeals that SUNY Buffalo Law School is not now, and never has been, in compliance with Standard 405(c), with the result that all clinical faculty contracts and due process rules that are based on compliance with Standard 405(c) are null and void.

82.     The University knew that it could make that meretricious argument with impunity because the ABA had already refused to take enforcement action against the Law School for expressly repudiating Standard 405(c), or to sanction it, under Rule 16, for "[m]aking misrepresentations or engaging in misleading conduct in connection with consideration of the law school's status by the Committee or the Council."

## COUNT II
### (DECLARATORY JUDGMENT)

83.     Plaintiff repeats the allegations of paragraphs 1-83 as if set forth fully herein.

84.     The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

85.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

86.     This Court possesses an independent basis for jurisdiction over the parties.

87.     A declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

88.     A judgment declaring that the ABA violated its legal duty to truthfully report the compliance status of SUNY Buffalo, and to take mandatory enforcement action against it for repudiating Standard 405(c), would benefit the legal education community by providing accurate information to legal educators and discouraging any further attacks on

the integrity and academic freedom of the clinical faculties throughout the United States.

89.     A declaratory judgment would also serve the useful purpose of restoring the Plaintiff's reputation, who was defamed as well as defrauded with a fraudulent 405(c)-compliant contract, a fraud for which the University has argued that there is no legal remedy.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that the Court:

(a)     Declare that SUNY Buffalo is in violation of Standard 405(c), and that the ABA's certification of its compliance with that standard was arbitrary and capricious, fraudulent, an abuse of discretion, and an abuse of the public trust;

(b)     Award damages to the Plaintiff for the ABA's accreditation fraud, in an amount to be determined at trial, including compensation for the Plaintiff's compensatory, emotional distress, reputational, and punitive damages; and

(c)     Award pre- and post-judgment interest, attorney's fees, and such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury on all issues so triable.


Respectfully submitted,

/s/ Jeffrey Malkan
Plaintiff *pro se*
12 Valleywood Ct. W
Saint James, N.Y. 11780
(631) 862-6668
jeffrey.malkan@outlook.com


Dated: November 19, 2018