## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY MALKAN, | | |
| Plaintiff, | | Case No. 18-cv-7810 |
| v. | | |
| AMERICAN BAR ASSOCIATION, et al., | | Judge John Robert Blakey |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Malkan, proceeding pro se, sues the American Bar Association (ABA), the ABA's Council of the Section of Legal Education and Admissions to the Bar (Council), and the Council's Accreditation Committee. Plaintiff's complaint alleges fraud and negligent misrepresentation under Illinois law (Count I) and seeks declaratory judgment against the ABA (Count II). [1]. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [21]. For the reasons explained below, this Court grants Defendants' motion and dismisses Plaintiff's complaint for lack of standing.

1

## I.    Complaint's Allegations[1]

### A.    The ABA

The ABA exists as a corporate entity organized into various components, including the Council and Accreditation Committee. [1] ¶ 12.  The U.S. Department of Education (DOE) recognizes the Council as the national accreditor for programs leading to J.D. programs.  *Id*. ¶ 13.  The Council adopts Standards for Approval (Standards), which set out criteria for ABA accreditation.  *Id*. ¶¶ 24–25.  The ABA monitors law schools' compliance with the Standards and periodically conducts reviews of each law school, known as site evaluations.  *Id*. ¶¶ 22, 53.  Any individual can file a written complaint alleging that a law school violated the Standards.  *Id*. ¶ 23.

### B.    Plaintiff's Clinical Employment & Termination

In July 2000, Plaintiff began working for SUNY-Buffalo Law School (the Law School) as a Clinical Associate Professor of Law, with a separate administrative appointment as Director of the Legal Research and Writing Program.  *Id*. ¶ 37.  Six years later, in April 2006, the Law School's Promotion and Tenure Committee recommended his reappointment and promotion to the title and rank of full Clinical Professor of Law.  *Id*. ¶ 38.  In October 2006, the Law School's then-dean, R. Nils Olsen Jr., offered Plaintiff a contract reflecting the promotion.  *Id*. ¶ 39.  The contract explained that Plaintiff's appointment was "intended to fully comply" with ABA rules,

---

[1] This Court takes the following facts from Plaintiff's Complaint, [1], documents attached to the Complaint, and documents central to the Complaint and to which the Complaint refers. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

"particularly standard 405(c) and all accompanying interpretations, especially interpretations 405-6 and 405-8." *Id*.

ABA Standard 405(c) requires law schools to "afford to full-time clinical faculty members a form of security of position reasonably similar to tenure." *Id*. ¶ 29. Interpretation 405-6 explains that:

> A form of security of position reasonably similar to tenure includes a separate tenure track or a program of renewable long-term contracts. . . . For the purposes of this Interpretation, "long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom. During the initial long-term contract or renewal period, the contract may be terminated for good cause, including termination or material modification of the entire clinical program.

*Id*. ¶ 30. According to Plaintiff, this "405(c)-compliant contract, together with the Law School's status as an ABA accredited law school," formed the basis for his expectation that absent good cause, "his contract renewal would be mandatory." *Id*. ¶ 41.

Two years later, on August 28, 2008, the Law School's then-dean, Makau W. Mutua, issued a notice of non-renewal that terminated Plaintiff's employment as of August 31, 2009. *Id*. ¶ 42. According to Plaintiff, this occurred without any consultation, deliberation, or recommendation by the faculty. *Id*.

## C. Subsequent Litigation

Plaintiff subsequently filed a due process suit against Dean Mutua, claiming that he held a protected property interest in his 405(c)-qualified contract. *Id*. ¶ 55;

*Malkan v. Mutua*, 699 Fed. Appx. 81 (2d Cir. 2017).[2]  The lower court granted summary judgment in favor of Mutua; the Second Circuit affirmed in 2017, rejecting Plaintiff's due process claim because New York State Department of Education regulations "cap term appointments at three years and do not create any manner of legal right, interest or expectancy in any other appointment or renewal."  699 Fed. Appx. at 82–83.  The Second Circuit also found that none of what Plaintiff cited in support of his protected property interest, such as the Law School's "by-laws, customs, accreditation reports, the American Bar Association's standards, and his contract— over[ode] that regulatory term."  *Id.*

### D.    Plaintiff's Efforts to Inform the ABA

In March 2016—after the lower court's ruling—Plaintiff attempted to notify the Accreditation Committee that the Law School, in its arguments before the lower court, admitted it violated Standard 405(c).  *Id.* ¶ 46.  Specifically, he alleged the 405(c) violation through a third party comment, which stated:

> The University has represented to the U.S. District Court of the Western District of New York that it is not able to comply with ABA Standard 405(c) because presumptively renewable term contracts are prohibited by the SUNY Trustees' Policies.  This contradicts the representations made to the ABA in the Self-Study Report of April 2009.  It also contradicts the Faculty Bylaws and the Clinical Faculty Appointments Policy.

*Id.* ¶ 46.  In April 2016, the Accreditation Committee's Counsel, Stephanie Giggetts, responded that because SUNY had a site evaluation scheduled within a few weeks, it

---

[2] Plaintiff also refers to a judicial decision from the New York Court of Claims.  [1] ¶ 6.  Plaintiff does not provide a citation to, or procedural history for, this case, but states that the court found "any long-term contracts and due process rules that promised to protect the academic freedom of the clinical faculty were ultra vires, unlawful, null and void."  *Id.*

would refer the matter to the site team and handle it as part of the "sabbatical site evaluation." *Id.* ¶ 48. Plaintiff does not clarify what, if anything, happened as a result of the site evaluation, but notes that Defendants approved the Law School's reaccreditation at some point in 2016. *Id.* ¶ 7. According to Plaintiff, in April 2017 the Accreditation Committee again reported no compliance issues with Section 405(c). *Id.* ¶ 52.

Later, in January 2018, Plaintiff submitted to the Committee a copy of the Second Circuit's decision in *Malkan v. Matua* as evidence of the Law School's non-compliance with Standard 405(c). *Id.* ¶ 56. In June 2018, the Accreditation Committee's Counsel responded to Plaintiff, writing that after a thorough review of his "complaint and the Law School's response, I have concluded that the facts you set forth fail to allege a violation by the Law School of the ABA Standards for Approval of Law Schools." *Id.* ¶ 58. Plaintiff sought clarification of this response from Accreditation Committee member Bradley Clary, who responded that he would submit Plaintiff's additional information to the Committee's Counsel. *Id.* ¶ 60. The Accreditation Committee met on June 30, 2018 and took no action based upon Plaintiff's purported evidence of the Law School's 405(c) violation. *Id.* ¶ 61.

In September 2018, Plaintiff filed another complaint with the ABA about its failure "to give a reasoned response" to any of his submissions, attaching a news article titled "Deep Rift Exposed as UB Law's Dean Resigns." *Id.* ¶¶ 62−63. The ABA again declined to take any action against the Law School. *Id.* ¶ 67.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Like Rule 12(b)(6), Rule 12(b)(1) requires this Court to construe Plaintiff's complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in his favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Courts evaluating Rule 12(b)(1) motions may look beyond the complaint to consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Silha*, 807 F.3d at 173 (When reviewing a challenge that

there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient, "the court may look beyond the pleadings and view any evidence submitted").

## III. Analysis

Defendants seek dismissal of both counts under Rule 12(b)(1) for lack of Article III standing and under Rule 12(b)(6) for failure to state a claim. Because standing is jurisdictional, this Court must consider that issue before reaching the merits. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Hinrichs v. Speaker of House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007); *Halperin v. Intern. Web Servs., LLC*, 70 F. Supp. 3d 893, 897 (N.D. Ill. 2014).

### A. Plaintiff Fails To Establish Article III Standing

Article III of the Constitution limits "federal judicial power to certain 'cases' and 'controversies.'" *Silha*, 807 F.3d at 172−73 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559−60 (1992)). To establish Article III standing, Plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 173 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180−81 (2000); *Lujan*, 504 U.S. at 560−61). The party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing. *Lujan*, 504 U.S. at 561. Defendants argue that Plaintiff fails to establish both the

7

"fairly traceable" and "redressability" prongs. [22] at 6–7. Because this Court finds that Plaintiff fails to show his injury is fairly traceable to any decision made by Defendants, it need not consider Defendants' redressability argument.

Plaintiff's theory of injury proceeds as follows. First, New York State regulations cap term appointments at three years and "do not create any manner of legal right, interest or expectancy in any other appointment or renewal." [1] ¶¶ 43–44. As a result, these regulations "retroactively abrogated" all of the Law School's certifications of compliance with Standard 405(c) and its presumptively renewable contract provision, requiring Defendants to sanction or otherwise discipline the Law School. *Id.* ¶¶ 2, 43–44. Therefore, when Defendants failed to do so, they "fraudulently applied its "imprimatur" on the Law School's Standard 405(c) compliance. *Id.* ¶ 80. Finally, according to Plaintiff, when Defendants continued to accredit a Law School in violation of Standard 405(c), they imposed the "stigma of a 'for cause' termination on the Plaintiff, which made it "impossible for him to resume his career at any other accredited law school." *Id.* ¶ 9.[3]

Plaintiff fails to establish Article III standing for the simple reason that this lengthy causal chain offers no connection between his injury—the alleged stigma following *his 2008 termination*—and Defendants' Standard 405(c) enforcement power. *See Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018) (in cases alleging defendants failed to properly enforce a policy, a plaintiff must "establish that his

---

[3] Although Plaintiff's Complaint alleges that declaratory judgment would "benefit the legal education community" as a whole, [1] ¶ 88, Plaintiff's response memorandum concedes that for purposes of this suit, his Article III standing relies solely upon his own injuries-in-fact. [25] at 12.

injury is causally connected to [defendants'] enforcement"); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014) ("The longer the causal chain, the less appropriate it is to entertain standing . . . . To allow a long, intermediated chain of effects to establish standing is to abolish the standing requirement as a practical matter . . . .").

Notably, Plaintiff fails to allege that the stigma arose because Matua terminated him without good cause, in violation of Standard 405(c), and Defendants failed to investigate and/or discipline this violation. *See generally id.* In fact, Plaintiff concedes that Defendants "had nothing to do with breaching his contract." [25] at 11. Rather, Plaintiff appears to allege that because New York State's regulations and Standard 405(c) conflict, the Law School's resulting Standard 405(c) violation, and Defendants failure to respond, cast a "stigma" over his unrelated termination. *Id*; [1] ¶¶ 2, 9, 42–44.

Simply put, these allegations provide zero connection between Defendants' Standard 405(c) enforcement power and Matua's decision to terminate Plaintiff, and any stigma resulting from that termination. The Complaint's sole allegation regarding Plaintiff's termination states that in 2008, Matua made an independent decision to not renew Plaintiff's contract without consulting the faculty. *Id.* ¶ 42. But terminating Plaintiff, by itself, does not necessarily constitute a Standard 405(c) violation; Interpretation 405-6 expressly gives schools discretion to terminate clinical professors for good cause, including termination or material modification of the entire clinical program. *Id.* ¶ 30. In fact, the Complaint indicates that this was the case, as

Plaintiff notes that the Law School terminated every clinical professor between 2009 and 2016. *Id.* ¶ 53. And Plaintiff offers no allegation to clarify how Defendants' decision to continue certifying the law school would otherwise cast a stigma over his termination in his subsequent employment efforts, particularly since Defendants issued their final decision on the Law School's Standard 405(c) compliance in 2018—ten years after his termination. [1] ¶ 67; [25] at 13.

Thus, absent any allegation that: (1) Matua acted beyond his discretion in terminating Plaintiff without good cause, in violation of Standard 405(c); and (2) Defendants failed to discipline or sanction the Law School for this specific violation, the Complaint demonstrates that Matua made an independent, discretionary decision to terminate Plaintiff. Thus, this Court cannot fairly trace Plaintiff's alleged injury—the stigma of a "for cause" termination—to Defendants. *See DH2, Inc. v. SEC*, 422 F.3d 591, 597 (7th Cir. 2005) (holding alleged injury not fairly traceable to SEC rules because "to a significant degree, the injury [plaintiff] complains of hinges on the decisions of independent actors whose discretion—though subject to securities laws and regulation by the SEC—is nonetheless quite broad."); *Segovia v. United States*, 880 F.3d 384, 389 (7th Cir. 2018) (holding injuries inflicted by voting law were not fairly traceable to defendants enforcing federal law given the "unfettered discretion" federal law left to Illinois); *Beckman v. Chi. Bear Football Club, Inc.*, No. 17 C 4551, 2018 WL 1561719, at *5 (N.D. Ill. Mar. 30, 2018) (holding that the Bears' "unfettered" discretion to enforce a policy "breaks the chain of causation from [plaintiff's] injury to the NFL.").

10

Plaintiff counters that if the ABA believes the Law School, rather than itself, should face liability for his damages, "its recourse is to implead the responsible University officials" under Fed. R. Civ. P. 14(a). [25] at 12. Not so. Rule 14 "presupposes liability on the part of the original defendant." *Parr v. Great Lakes Express Co.*, 484 F.2d 767, 769 (7th Cir. 1973). In other words, Rule 14 cannot relieve Plaintiff of his Article III burden, which requires an injury fairly traceable to "the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41−42 (1976))

In short, the conflict between New York State's regulations and Section 405(c) cannot (absent additional facts not present here) establish a sufficient connection between Defendants and any stigma resulting from Plaintiff's 2008 termination. As such, this Court grants Defendants' motion to dismiss [21] for lack of subject matter jurisdiction, and thus need not address Defendants' 12(b)(6) arguments.

## B. Leave to Replead

At the parties' motion hearing on March 5, 2019, Plaintiff conceded that he did not require any further amendments to his complaint. Based upon this representation in open court, this Court dismisses Plaintiff's complaint with prejudice.

## IV.    Conclusion

For the reasons explained above, this Court grants Defendants' motion to dismiss with prejudice.  [21].  All dates and deadlines are stricken.  Civil case terminated.

Dated: May 8, 2019

Entered:

John Robert Blakey
United States District Judge